# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 22-CR-19 |
| | : | |
| JOSEPH PERKINS | : | |
| *Defendant.* | : | |

## MEMORANDUM

**KENNEY, J.**                                                            August 22, 2022

### I. INTRODUCTION

On January 18, 2022, Defendant Joseph Perkins was indicted by a federal grand jury on charges of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(e) (Count I) and possession of stolen firearms, and aiding and abetting, in violation of 18 U.S.C. §§ 922(j) and 2 (Count II). Presently before the Court is Defendant Perkins's Motion to Suppress (ECF No. 19), which asks this Court to suppress evidence derived from the search of Perkins's Instagram account (account number 512236362, bearing the username "fba_carty" and the display name "Cartier").[1]

### II. BACKGROUND

#### A. Procedural History

On September 15, 2021, United States Magistrate Judge Carol Sandra Moore Wells signed a search warrant (the "Search Warrant") authorizing the search of two separate Instagram

---

[1] Instagram is a free-access social media platform, which can be accessed at https://www.instagram.com. Instagram users are able to create individual profile pages, which are associated with a username and display name, as well as a unique account number.

1

accounts[2] in connection with the government's investigation into a burglary of Treeline Sports, Inc. ("Treeline Sports"), that had occurred on February 12, 2020, at approximately 2:00 a.m.

In support of its application for the Search Warrant, the government also submitted an Affidavit of Richard Dalley (the "Affidavit") who is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). The Affidavit provides, *inter alia*, a thorough explanation of the investigation into the Treeline Sports burglary, a precise description of the Instagram accounts to be searched, and a detailed explanation of information and evidence supporting the conclusion that probable cause existed to authorize the search warrant.

Subsequently, in connection with the investigation into the Treeline Sports burglary, on January 18, 2022, Defendant Perkins was indicted by a federal grand jury on charges of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(e) (Count I) and possession of stolen firearms, and aiding and abetting, in violation of 18 U.S.C. §§ 922(j) and 2 (Count II).

On June 26, 2022, Defendant Perkins, through counsel, submitted a pretrial Motion to Suppress (ECF No. 19) asking this Court to suppress any evidence that was derived from the search of Perkins's Instagram account (bearing the username "fba_carty").

On July 14, 2022, the United States filed a Response in Opposition (ECF No. 20).

On August 4, 2022, the Court held a hearing on the Motion to Suppress (ECF No. 19). *See* ECF No. 23 Tr.

---

[2] The Motion to Suppress that is presently before the Court focuses solely on the search warrant as it pertains to the Instagram account bearing the username "fba_carty" belonging to Defendant Perkins. The Court makes no findings related to the second Instagram account identified in and authorized to be searched by the Search Warrant.

### B. Facts Provided in the Affidavit[3]

In the Affidavit, Special Agent Dalley details the investigation into the February 12, 2020 burglary of Treeline Sports. Dalley explains that the investigation started on February 12, 2020 at approximately 2:12 a.m., when the West Norriton Township Police Department responded to a burglary alarm activation at Treeline Sports. Aff. ¶ 9. When police arrived, the store's owner informed investigators that he had received an alarm notification on his cell phone at 1:59 a.m., and that he had responded to his business to check on the alarm and then called 9-1-1 because he noticed the front door was open and the glass window next to the door was shattered. *Id.*

Dalley explains that police were later able to determine that five rifles were missing from the store's inventory. Aff. ¶ 10. At the scene of the burglary, police collected the following evidence: a silver claw hammer; white jacket insulation stuck to a metal security gate inside the store; a reddish substance believed to be blood on the hammer, on the floor near the front door, and on the interior doorknob of the front door. *Id.* The ATF Laboratory later confirmed that the reddish substance was blood, and subsequent investigation revealed the blood matched the DNA profile of Dajon Rowe. Aff. ¶¶ 10, 20.

Dalley further explains how through a review of security footage, investigators concluded that there were three suspects present during the burglary, one who served as the getaway driver, driving a dark-colored sedan, and two who actually entered Treeline Sports and, working together, took five firearms and an unknown quantity of magazines from the store. Aff. ¶¶ 12–13. Dalley also explains how on the security footage he observed that one of the suspects

---

[3] The following is a non-exhaustive summary of the relevant information set forth in the Affidavit. In deciding the Motion to Suppress (ECF No. 19), this Court considered the entirety of the Affidavit, which is attached to Defendant's Motion to Suppress as Exhibit 3. *See* ECF No. 19 Ex. 3.

climbed over a security fence inside the store and that this individual had become stuck briefly at the top of the fence. Aff. ¶ 13.

The Affidavit also details statements made by a Cooperating Source (the "CS") who claimed to have knowledge about a burglary of a gun store in Norristown, Pennsylvania that occurred in late February or early March of 2020.[4] Aff. ¶¶ 14–15. The CS told investigators that the burglary was committed by three of his or her acquaintances, and through photo identification the CS confirmed the individuals were Dajon Rowe, Robert Parker, and Joseph Perkins. Aff. ¶ 15. The CS told investigators that he or she had known these three individuals for approximately seven years and that they had provided protection for him or her while he or she sold marijuana out of Rowe and Parker's apartment. Aff. ¶ 16. The CS stated that he or she knew that the three individuals operated together and had committed violent crimes in the past, including robbing rival drug dealers. *Id*. The CS also stated that he or she knew Rowe, Perkins and Parker often rented cars, but that Rowe also utilized his grandmother's car, which was a 2015 or 2016 black Dodge sedan. *Id.* The Affidavit explains that this description of Rowe's grandmother's car was consistent with the vehicle used in the Treeline Sports burglary observed on the security footage. *Id.*

The CS explained to investigators that he or she knew that Rowe, Parker, and Perkins committed the burglary because the CS had gone to Rowe and Parker's apartment in late February or early March, upon invitation from Rowe, and had witnessed Rowe, Perkins, and Parker sitting in Rowe's bedroom with five or six rifles, a pistol, and an unknown quantity of

---

[4] More specifically, Dalley provides that on July 24, 2020 investigators, including Special Agent Dalley, interviewed a Cooperating Source ("CS") about an unrelated matter. Aff. ¶ 14. Then, on May 14, 2021, other law enforcement interviewed the CS again, and at the time, the CS provided information pertaining to the burglary of Treeline Sports. *Id.*

4

rifle magazines. Aff. ¶¶ 17–18. The CS observed Rowe using a hand file to file off the serial number on one of the rifles and gold and silver spray paint to paint the rifle magazines. Aff. ¶ 18. The CS stated that Rowe told the CS that the guns had been stolen from a store in Norristown, Pennsylvania a few days prior. *Id.* The CS also stated that Rowe told him or her that during the burglary he had injured himself climbing over a security gate and showed the CS lacerations on his stomach. *Id.* Further, the CS told investigators that Parker and Perkins were present during the burglary but was unsure if Perkins actually entered the store. Aff. ¶ 19. However, the CS also provided that it was likely Parker acted as the getaway driver because the CS knew Parker to be the only one of the three men with a valid driver's license. *Id.* The CS also told investigators that Rowe, Parker, and Perkins intended to sell all but one of the stolen firearms and that they intended to commit a bank robbery with the remaining firearm. *Id.*

In the Affidavit, Dalley explains how the information provided by the CS was corroborated by what investigators found at the scene of the crime and observed on the security footage and that much of this information had not been provided to the media, so the CS would not have been able to obtain this information through the news. Aff. ¶ 20. For example, the fact that Rowe injured his stomach climbing over the fence was consistent with the security footage showing one of the suspects getting stuck at the top of the security fence and also with the evidence found at the scene of the crime, such as jacket insulation and blood matching Dajon Rowe's DNA profile. *Id.*

The Affidavit also details how, on August 14, 2020, investigators executed a search warrant of Rowe and Parker's apartment. Aff. ¶ 21. During the search, and in a bedroom belonging to Rowe, law enforcement found a metal hand file, numerous rounds of ammunition, and paperwork belonging to Rowe's girlfriend. *Id.* Additionally, elsewhere in the apartment,

investigators found gold spray paint, a photo identification card of Parker, numerous firearm magazines and ammunition, as well as a black jacket with rips on the front revealing white insulation inside. *Id.*

In the Affidavit, Dalley also explains the significance of the Instagram accounts to the investigation. Specifically, Dalley explains that through the investigation, he became aware of an Instagram account with the username "fba_carty" and display name "Cartier" and that on this account there were multiple "selfies" of Perkins. Aff. ¶¶ 22–23. Additionally, Dalley explains that there was a photograph posted on the "fba_carty" Instagram from January 17, 2020 that investigators determined to be a photograph of Perkins in Defendant Rowe's bedroom. Aff. ¶ 23. Dalley notes that the information on the "fba_carty" Instagram further corroborated what the CS had told investigators, in that it demonstrated an association between Perkins and Rowe. *Id.*

The Affidavit also provides information about Rowe being arrested on February 28, 2020,[5] and the fact that Perkins was present during that arrest. Aff. ¶¶ 25–26. Dalley also explains that on June 30, 2021, a search warrant was obtained to search Rowe's iPhone that had been seized during his arrest. Aff. ¶ 29. On Rowe's iPhone, investigators discovered Instagram messages between Rowe and the Instagram account with the display name "Cartier" that was believed to belong to Perkins from February 12, 2020 (the date of the Treeline Sports burglary) at 6:12 p.m. to February 28, 2020 at 8:11 p.m. Aff. ¶ 33. A review of these messages revealed to investigators that on February 12, 2020, at 6:12 p.m., via Instagram, Rowe had sent a photograph

---

[5] Rowe was arrested in a hotel room in East Norriton, Pennsylvania after police were called to the hotel to investigate a report of illegal drug use and underage consumption of alcohol. Aff. ¶¶ 25–27. Rowe was found to be in possession of marijuana, and police determined that Rowe had an outstanding arrest warrant out of West Chest, Pennsylvania. *Id.*

to the Instagram account believed to belong to Perkins (display name "Cartier"); however, investigators were unable to actually view this photograph because it had been deleted. *Id*.

Rowe's phone was also found to contain Instagram messages attempting to sell firearms on February 12, 2020. Aff. ¶ 34.

In the Affidavit, Dalley also provided a thorough overview of his background and experience and explained that based on his training and experience, he had knowledge that people who engage in firearm related offenses, including burglaries to steal firearms and similar crimes, will often communicate with their coconspirators by way of cellular telephone (including via Instagram messenger) in connection to the commission of such crimes. *See* Aff. ¶¶ 1–7, 58.

## III. STANDARD OF REVIEW

The Fourth Amendment requires that a search warrant must (1) be based on probable cause, (2) be supported by a sworn affidavit, (3) describe particularly the persons or places to be searched and (4) a description of the type of evidence sought. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004) ("[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents"). A warrant may cross-reference other documents, and "[a] court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id*. at 557–58.

In general, when considering motions to suppress evidence obtained through a search warrant authorized by a magistrate judge, district courts defer to a magistrate judge's finding of probable cause and review the magistrate judge's decision to grant the warrant for clear error. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review…[and] a magistrate's determination of

probable cause should be paid great deference by reviewing courts") (internal quotations and citations omitted); *see also United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 146 (3d Cir. 2002) ("[w]hen a warrant is issued and later challenged, a deferential standard of review is applied in determining whether the magistrate judge's probable cause decision was erroneous…[t]he reviewing court inquires whether there was a substantial basis for finding probable cause") (internal citations and quotations omitted).

"A magistrate judge may find probable cause when, viewing the totality of the circumstances, 'there is a fair probability that ... evidence of a crime will be found in a particular place.'" *Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d at 146 (quoting *Gates,* 462 U.S. at 238). Accordingly, reviewing courts should "uphold [a] warrant as long as there is substantial basis for a fair probability that evidence will be found" in the place to be searched. *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993).

**IV.    DISCUSSION**

For the reasons that follow, this Court finds that Magistrate Judge Wells had a substantial basis for finding that there was a fair probability that evidence of possession of illegal firearms would be found on Defendant Perkins's Instagram account, and accordingly Magistrate Judge Wells had a substantial basis for concluding that probable cause existed to authorize the search of Defendant Perkins's Instagram account. *Conley*, 4 F.3d at 1205.

Defendant argues that the Affidavit is lacking probable cause because the Affidavit "does not raise a 'fair probability' that evidence relevant to the charges against Defendant (firearm possession) would be found in the place to be searched, i.e.[,] his Instagram account." ECF No.

19 at 6–7. According to Defendant, the Affidavit falls short in that it contains "mere generalized allegations that people who commit crimes use social media to communicate" and also in that "[a]t best, the Affidavit establishes a mere association between Rowe and Defendant." ECF No. 19 at 7.

Addressing Defendant's first argument, however, the Court finds that the statements by Dalley in the Affidavit regarding his knowledge of the use of Instagram in relation to the commission of firearms related crimes, constitute more than mere generalizations, and in any case, the statements he made are directly supported by other evidence obtained by law enforcement during the investigation that was presented to Magistrate Judge Wells in the Affidavit. Specifically, the Affidavit contains experience-based statements regarding Dalley's knowledge of the use of Instagram in connection to the commission of firearm related crimes. *See e.g.,* Aff. ¶ 58 ("[b]ased on my training and experience, I know that people who engage in firearms related offences, including burglaries…to steal firearms…will often communicate with their coconspirators and/or accomplices by way of cellular telephone (including via…social media applications, such as Instagram)). Moreover, the Affidavit also contained a detailed explanation as to how a search of Rowe's phone yielded evidence that Rowe was, in fact, attempting to sell firearms through Instagram messenger on February 12, 2020 (the date of the Treeline Sports burglary) between 10:15 a.m. and 3:45 p.m. Finally, the CS informed investigators that Rowe, Perkins, and Parker intended to sell most of the stolen firearms. *See* Aff. ¶ 34. Thus, here, the Affidavit contained far more than just a law enforcement officer's generalizations to support the conclusion that there was a fair probability that evidence of illegal firearm possession would be found on Perkins's Instagram account.

9

Further, addressing Defendant's second argument, the Court finds that upon review of the Affidavit, investigators established more than just a mere association between Perkins and Rowe. First, the information provided by the CS, that was in large part able to be corroborated by investigators, specifically identified Perkins as being involved with the burglary and placed him at Rowe's apartment shortly after the burglary and in the presence of the stolen firearms. *See e.g.,* Aff. ¶¶ 17–19 ("[t]he [CS] stated that PERKINS was present during the burglary). More specifically, the Affidavit outlines in detail how the CS told investigators that shortly after the burglary, he or she had seen *both* Rowe and Perkins (and Parker) in Rowe's bedroom with five or six rifles and an unknown quantity of magazines, and that he or she had observed Rowe filing off the serial number on one of the rifles and that Rowe had spraypainted the magazines gold and silver. Aff. ¶ 18. The CS also told investigators that Rowe had shown him or her an injury that he told the CS he had sustained while climbing the security fence during the burglary. *Id.* Investigators were able to then substantially corroborate the information provided by the CS through the fact that information provided by the CS was consistent with evidence obtained throughout the investigation that was not public knowledge, such as the injury Rowe sustained while climbing the security fence, as well as the evidence obtained at the scene of the crime and during subsequent searches of Rowe's apartment and cell phone. *See e.g.,* Aff. ¶¶ 20, 21.

Further, the Affidavit also explained how the search of Rowe's cell phone revealed to investigators what appeared to be communications between Rowe's and Perkins's Instagram accounts spanning February 12, 2020 at 6:12 p.m. and February 28, 2020 at 8:11 p.m. ECF No. 19 Ex. 3 ¶ 33. Moreover, investigators identified that on February 12, 2020 at 6:12 p.m., the same day the Treeline Sports burglary occurred, and also the same day Rowe had been attempting to sell firearms via Instagram, Rowe sent Perkins a photo message through Instagram

(however, because the photograph had been deleted investigators were unable to determine its contents). *Id.* Thus, the evidence set forth in the Affidavit shows not just an association between Rowe and Perkins, but an association between Rowe and Perkins that is linked to the Treeline Sports burglary.

Accordingly, upon consideration of the information contained in the Affidavit,[6] the Court finds there was a substantial basis for the Magistrate Judge to find probable cause and authorize the Search Warrant. The Court finds that information contained in the Affidavit clearly established a "fair probability" that "evidence" of possession of stolen firearms would be found on Perkins's Instagram account, and that therefore, Magistrate Judge's finding of probable cause was clearly not in error.

## V.   CONCLUSION

For the reasons provided above, the Court will DENY Defendant's Motion to Suppress (ECF No. 19).

**BY THE COURT:**

/s/ *Chad F. Kenney*
_____
Chad F. Kenney, Judge

---

[6] The Court notes that in making its determination that the Magistrate Judge had a substantial basis for finding probable cause, it has considered the Affidavit as a whole.